[Civ. No. 10437.   Third Dist.   July 31, 1962.]

MILDRED E. KRASSNER, Plaintiff and Appellant, v. MARVIN E. VENEMAN et al., Defendants and Respondents.

Cornish & Cornish and Francis T. Cornish for Plaintiff and Appellant.

Darrah & Darrah and Guard C. Darrah for Defendants and Respondents.

PIERCE, J.—This is a judgment-roll appeal, by plaintiff and cross-defendant, Mildred E. Krassner, from a judgment quieting title to a parcel of San Joaquin County real prop-

erty in defendants and cross-complainants S. Travaille and S. E. Vanderveen, as copartners (hereinafter called the ''copartners'').

Plaintiff had been the holder of a deed of trust made by Gilbert J. Behlen and Lena V. Behlen, his wife. Plaintiff's claim is by reason of a trustee's deed dated December 22, 1959, on foreclosure of this deed of trust.

The copartners claim under a certificate of sale and a later deed from the United States upon a sale to satisfy tax liens.

Plaintiff contends that she has made a valid redemption of said property from said sale, effected by filing her complaint in this action and by depositing a sum of money with the clerk of the court. The trial court found against that contention. This is the principal question on appeal.

The essential facts, in chronological order, are these:

On April 25, 1951, the Collector of Internal Revenue recorded an income-tax lien against one of the owners, Gilbert Behlen. On March 22, 1956, the Director of Internal Revenue recorded another lien against Gilbert and Lena Behlen. Later liens were recorded but these came after the execution of the deed of trust in favor of plaintiff's assignor, which was made and delivered May 19, 1958, and, therefore, were junior to said trust deed. (26 U.S.C.A. § 6323.)

On March 18, 1959, the Director seized the land and sold it for the delinquent taxes. The trial court found that the sale was for the two tax liens of 1951 and 1956. The copartners were the purchasers and the price was $1,262.50.

Thereafter the copartners executed a contract of sale and purchase of the real property to defendants Marvin E. and Janice R. Veneman. This contract was unrecorded. The Venemans thereupon executed a trust deed to defendant title company as trustee and to defendant Willemina Beltman, a widow, as beneficiary, to secure a promissory note for $5,500. This trust deed was recorded April 24, 1959.

The United States Internal Revenue Code, 26 U.S.C.A., section 6337, subdivision (b)(2) provides that property may be redeemed within one year after its sale *''upon payment to the purchaser,* or in case he cannot be found in the county in which the property to be redeemed is situated, then to the Secretary or his delegate, for the use of the purchaser, his heirs, or assigns, the amount paid by such purchaser and interest thereon at the rate of 20 per cent per annum.'' (Emphasis supplied.)

Plaintiff did not redeem, or attempt redemption, by a direct tender of the purchase price plus interest to the purchasers, the copartners. Her only attempted redemption was by this suit in which there was a deposit with the clerk of the court of the said sum of $1,262.50, plus 20 per cent interest for one year.

It is the contention of defendant copartners that there must be a literal compliance with the section, a "payment to the purchaser." Failing this, there is no redemption. The trial court accepted this contention.

Plaintiff urges that "payment to the purchaser" should be interpreted to mean payment to the "purchaser or his assigns." And if it is thus construed (says plaintiff), an intended redeemer who has constructive notice of an assignment cannot risk payment to the original purchaser. Neither can he safely pay the assignee unless the extent of the interest assigned appears of record. His only safe course is to bring an action, naming as defendants all parties having an interest in the property, under and after the certificate of sale, and to deposit the redemption money with the clerk of the court as the interests of the defendants may be adjudicated.

We find plaintiff's contention sound and would hold that a valid redemption would have been thus accomplished—*if plaintiff had, in fact, effectually interpleaded the parties interested.*

"It is the general rule of courts to give to statutes authorizing redemption from tax sales a construction favorable to owners, when they provide . . . full indemnity to the purchaser, and impose a penalty upon the delinquent. . . ." (*Corbett* v. *Nutt,* 77 U. S. (10 Wall.) 464 [19 L. Ed. 976, 979].)

It is stated in 2 Cooley on Taxation (3d ed.) pages 1023-1024: ". . . [I]t is for the welfare of every community that the law should favor the citizen in all reasonable measures for the preservation of his estate against losses which might result from his misfortunes or his faults. . . .

"The statutes which give the right [of redemption] are to be regarded favorably and construed with liberality. . . . To divest ownership, without personal notice and without direct compensation, is the instance in which a constitutional government approaches most nearly to an unrestrained tyranny. Whatever tends to modify this right is favorable to the citizen, and ought to be liberally construed, on the principle that remedial statutes are to be beneficially expounded."

As we read 26 U.S.C.A. section 6337, subdivision (b) (2) it *does* contemplate the possibility of an assignment by the purchaser. Referring to the situation where a purchaser cannot be found in the county and payment is to the "Secretary or his delegate" such payment is "for the use of the purchaser, his heirs, or *assigns*." Assignment having been in the mind of Congress, we would be giving the section a strained construction to interpret it to mean that the redeemer who has notice of an assignment must, nevertheless, pay the original purchaser unquestioningly. In doing so he would be buying a pig-in-a-poke. And since the statute provides no officer of the government who may accept payment "for the use of" the parties found to be entitled thereto—in cases where the purchaser *can* be found within the county the person seeking to redeem can only resort to the courts.

In California, the dilemma of the debtor who knows that he owes a sum of money to someone but cannot ascertain to which of two or more claimants it should be paid has been met by a code section permitting him to interplead the contending parties and deposit the money with the clerk of the court. (Code Civ. Proc., § 386.)

If and when a redemption is to be effected by court action, however, the complaint filed by the proposed redeemer becomes a written tender, and, coupled with the deposit of money, constitutes the redemption itself.

We must turn then to the complaint filed here to determine whether or not it can be said to have accomplished this purpose. The complaint alleges plaintiff's ownership of the property under the trust deed foreclosure. It alleges the recordation by the Collector of Internal Revenue on April 25, 1951, of a tax lien against Gilbert Behlen, regarding which the complaint states: "Plaintiff is informed and believes, and therefore alleges, that said claim of lien is void, in that defendant, Gilbert J. Behlen, was never indebted to defendant, United States of America, in the aforesaid sum of $50.40, and, further, in that said lien's enforcement has become barred by virtue of the statute of limitations as established by the Internal Revenue Laws of the United States of America." Similar allegations are set forth with reference to the tax lien recorded March 22, 1956. The subsequent government tax liens are also alleged, on information and belief, to be void. The tax sale hereinabove referred to is alleged to be a "purported" sale and the complaint further alleges "Plaintiff is informed and believes, and therefore alleges,

that neither defendant, S. Travaille, nor defendant, S. E. Vander Veen, acquired any interest in said real property by virtue of said certificate of sale. . . .'' This is followed by an allegation that ''none of said defendants have any right, title, or interest in or to said real property, or any part thereof.''

In the same count of the complaint, however, it is alleged: ''Plaintiff desires to do equity and for that reason tenders herewith to any person entitled thereto the sum of $1,515.00, which is the aforesaid sum of $1,262.50 together with interest at the rate of 20% per annum from March 18, 1959, until March 18, 1960, and herewith deposits said sum with the Clerk of this Court conditioned that if it should be found that the lien of the United States of America pursuant to which said real property was sold . . . was a valid lien, prior to the claim of plaintiff, or if defendants, S. Travaille, S. E. Vander Veen, Marvin E. Veneman, Janice R. Veneman, Security Title Insurance Company, and Willemina Beltman, or any of them cause to be deposited with the Clerk of this Court a Deed conveying to plaintiff the interest derived by said defendants pursuant to said Certificate of Sale of Seized Property, the Clerk of this Court shall forthwith pay to the person or persons delivering said conveyance, or found to have an interest in said property by virtue of said Certificate of Sale of Seized Property, prior to the claims of plaintiff the sum of $1,262.50, plus interest thereon from March 18, 1959, until date of payment at the rate of 20% per annum but in no event a total sum of more than the amount of said deposit, and that if defendants . . . are found to have derived no title prior to the claims of plaintiff by reason of said certificate of sale, or do not so tender said conveyance as aforesaid, said money shall be returned to plaintiff.''

From this language used in the complaint, interpretation of the intent of the pleader is not easy. Plaintiff's own interpretation in her brief is: ''In order to avoid any controversy over the relative priorities of the various tax liens appellant elected to redeem the property from the sale.'' We cannot characterize her pleading as revealing such a clear-cut intent. The earlier paragraphs, on the contrary, show an attack upon the tax liens and a desire to quiet title against an invalid tax sale. The complaint then expresses a desire to ''do equity'' by a deposit of the amount of the tax sale purchase into court, but the conditions of disbursement are by no means unequivocal. The first condition would require

a court determination that the tax liens and tax sales were, contrary to plaintiff's contention, valid. The second condition, expressed in the alternative by use of the conjunction "or", requires a deed from the purchasers or their assignees "or any of them" conveying the interest derived from the tax sale certificate. If, as plaintiff now claims, there was an intent to *waive* the issue of the tax liens why was their invalidity pleaded and why was an adverse determination by the court of plaintiff's contention in this regard mentioned as a condition at all? Whatever this pleading means, it is not a clear and outright effort by an intended redeemer to effect an immediate redemption. It is not the action of a stakeholder making a direct and immediate discharge of an obligation by depositing a sum due into court, leaving the contending parties to settle or litigate their controversy as *they* elect. Instead, plaintiff has raised collateral issues, control over which is not in defendants alone, settlement of which could keep the matter in litigation for a protracted period of time. This type of "redemption" in our opinion was not what Congress contemplated by "payment to the purchaser."

There is a distinction between a suit to redeem and a suit to quiet title against an invalid tax sale, tacked onto which is an offer to do equity by reimbursing the purchaser at the tax sale.

Some states, by special statute, permit suits to contest tax titles and sometimes these statutes impose as a condition the obligation of repayment of the tax sale purchase price. (2 Cooley on Taxation (3d ed.) pp. 1056-1058.) But this is not redemption. Such a statute was involved in *Jaedecke* v. *Rummell*, 207 Ark. 286 [180 S.W.2d 842], and the plaintiff in intervention contended that it was one permitting redemption. Denying that contention the Arkansas Supreme Court stated on page 845 [180 S.W.2d]:

". . . [A] right to redeem from a tax sale is essentially different from a right to contest a tax sale. The right of redemption is an act of grace extended by the sovereign and its exists not only as to void but also as to valid sales; while a right to make a defense against such a sale can be appropriately exercised only when the sale is void. In the case of *Sparks* v. *Farris,* 71 Ark. 117 [71 S.W. 255, 256, 945], Chief Justice Bunn, speaking for the court, said: 'Nor can one consistently petition to be allowed to redeem, and at the same time call in question the tax title of the purchaser, for, in the very nature of things, one who applies to redeem must

admit the regularity of the forfeiture and tax sale, or at least must waive any right to call the same in question. . . .' "

Not even by stretching the limits of "free" interpretation to the breaking point can it be said that Congress by section 6337, subdivision (b)(2) intended to permit "redemption" by a suit which contemplates that the validity of the tax be judicially determined.

It follows, therefore, that here there has been no redemption. ■ The rule that redemption statutes are to be liberally construed does not mean that their provisions can be disregarded. (2 Cooley on Taxation (3d ed.) p. 1025.) ■ And where the terms of the redemption statute are not complied with there can be no redemption, because: "The right of redemption comes entirely from the statute, and it is subject to all the limitations and conditions therein imposed." (*Quinn* v. *Kenney,* 47 Cal. 147, 150, quoted in *Sutter-Yuba Inv. Co.* v. *Waste,* 21 Cal.2d 781, 785 [136 P.2d 11], and in *Peterson* v. *Johnson,* 39 Cal.2d 745, 748 [249 P.2d 17].)

Having determined that no redemption from the tax sale was effected, there would remain, under the pleadings, a determination of the question of the validity of the tax sale itself. But the contention that it was void seems to have been abandoned. The trial court has found that the title of the cross-complainants, copartners, is derived from the tax liens of April 25, 1951 and March 24, 1956, the certificate of sale recorded March 20, 1959, and a tax deed recorded April 13, 1960. Plaintiff does not question that both of said liens had priority over the deed of trust under which she acquired title, nor does she challenge any of the proceedings under which the tax sale was held. She does in her brief challenge the distribution of the tax sale receipts by the Director of Internal Revenue. But it is not clear to us what connection this can have to the present controversy, since she did not claim any portion of this money in her complaint and the distribution of tax sale proceeds can have no relevancy to the issue of the validity of the sale itself.

The judgment is affirmed.

Peek, P. J., and Schottky, J., concurred.

A petition for a rehearing was denied August 22, 1962.